IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-01840-PAB-KAS

JUSTIN STOEBER,

Plaintiff,

v.

CODY NAU, and
JACOB PARENT,

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants Cody Nau and Jacob Parent's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Request for Qualified Immunity [Docket No. 56]. Plaintiff Justin Stoeber filed a response, Docket No. 59, and defendants filed a reply. Docket No. 64. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. UNDISPUTED FACTS[1]

At approximately 8:00 p.m. on October 13, 2023, Mr. Stoeber arrived home after attending a wedding. Docket No. 56 at 2-3, ¶ 1. Mr. Stoeber had consumed alcohol at the wedding.[2] *Id.* After arriving home, Mr. Stoeber mostly slept on his couch. Docket

[1] The following facts are undisputed unless otherwise noted.

[2] Mr. Stoeber admits that, at around 3:30 p.m., he consumed "about two-third of a flute of champagne or sparkling wine during the toasts and speeches" at the wedding. Docket No. 59 at 2, ¶ 1. Mr. Stoeber does not admit to any other alcohol consumption, *id.*, nor does defendants' cited evidence support that Mr. Stoeber consumed any additional alcohol. *See* Docket No. 1 at 4, ¶ 16; Docket No. 56-1 at 4; Docket No. 56-2 at 4, 91:21-25.

No. 59 at 8, ¶ 16. Sometime between midnight and 1:00 a.m., Mr. Stoeber stepped into his backyard to smoke a cigarette.[3] Docket No. 56 at 3, ¶ 2. While in his backyard, Mr. Stoeber heard a noise in the alleyway behind his house. *Id.*, ¶ 3. Upon investigation, Mr. Stoeber discovered two men crouched in the shadows. *Id.* Mr. Stoeber confronted the two men, and one of the men brandished a firearm in response. *Id.*, ¶ 4. As a result, Mr. Stoeber was fearful for his life and felt that he should also have a firearm on him. *Id.* Mr. Stoeber told the individuals that he was going to call 911 and get a gun to defend himself. *Id.*, ¶ 5. Mr. Stoeber subsequently went back inside his house and called 911 to request assistance from the Longmont Police Department. *Id.*, ¶ 6. Mr. Stoeber reported to 911 that there were two individuals sitting in his alley and one of them appeared to have a gun. *Id.*, ¶ 7. After he hung up with 911, Mr. Stoeber put on his shoes, obtained his firearm, and went outside. *Id.* at 4, ¶ 8. At the time, Mr. Stoeber had a concealed carry permit and was legally allowed to possess firearms. Docket No. 59 at 8, ¶ 18. Mr. Stoeber spent approximately ten minutes walking around his neighborhood with a loaded firearm, looking for the individuals who threatened him. Docket No. 56 at 4, ¶ 10.

City of Longmont Police Officer Cody Nau responded to Mr. Stoeber's call and was flagged down by Mr. Stoeber. *Id.*, ¶ 12. Officer Nau asked Mr. Stoeber if he was armed, and Mr. Stoeber said he was carrying a knife and a gun.[4] *Id.*, ¶ 14. Officer Nau

---

[3] Defendants state that Mr. Stoeber stepped into his backyard at around 12:45 a.m., whereas Mr. Stoeber states that he stepped into his backyard "around 12:15, 12:30." Docket No. 56 at 3, ¶ 2; Docket No. 59 at 3, ¶ 2. The Court deems it undisputed that at some point between midnight and 1:00 a.m., Mr. Stoeber stepped into his backyard to smoke a cigarette.

[4] Defendants assert that Mr. Stoeber only admitted to carrying a gun "after some prodding by Officer Nau." Docket No. 56 at 4, ¶ 14. Mr. Stoeber admits that he told

informed Mr. Stoeber he was being detained because Officer Nau smelled alcohol on Mr. Stoeber and Mr. Stoeber was in possession of a firearm. *Id.* at 5, ¶ 15. Officer Nau arrested Mr. Stoeber and charged him with violating Colo. Rev. Stat. § 18-12-106, Prohibited Use of a Weapon. *Id.*, ¶ 17. Officer Parent—who also responded to Mr. Stoeber's call—physically assisted with the arrest and placed handcuffs on Mr. Stoeber. *Id.* at 6, ¶ 23. At the time of Mr. Stoeber's arrest, both Officer Nau and Officer Parent believed it was a violation of Colo. Rev. Stat. § 18-12-106 for an individual to have consumed any alcohol at all while in possession of a firearm.[5] Docket No. 59 at 8, ¶ 19. When determining if a person is intoxicated, Officer Nau considers factors including a person's decision-making. Docket No. 56 at 5, ¶ 16. Officer Nau believed that, because Mr. Stoeber stated he was just menaced, it was illogical to obtain a firearm and then walk into his neighborhood looking for the individuals who just menaced him, especially since, according to Mr. Stoeber, they had run away. *Id.* at 5-6, ¶ 19. Based on Officer Nau's experience, if somebody has a firearm pointed at him, he is not going

---

Officer Nau he had a knife and gun, but denies that he only stated he was carrying a gun "after some prodding." Docket No. 59 at 4, ¶ 13. Thus, the Court deems it admitted that Mr. Stoeber told Officer Nau he was carrying a knife and a gun.

[5] Defendants dispute this fact on the basis that the testimony cited by Mr. Stoeber does not support the assertion. Docket No. 64 at 4, ¶ 19. Mr. Stoeber cites deposition testimony by Officer Nau and Officer Parent in support of the assertion. Officer Nau was asked, "[s]o it's your understanding that the prohibited use of a weapon charge, if you've had any alcohol at all you're in violation of the statute if you possess a firearm." Docket No. 59-2 at 6, 51:4-7. Officer Nau stated "[t]o my knowledge, yes" and confirmed that this was also his understanding at the time he arrested Mr. Stoeber. *Id.*, 51:8-11. Officer Parent similarly stated he believed it was "[c]orrect" that an individual was in violation of the statute if he "consumed any alcohol at all and [is] in possession of a firearm." Docket No. 59-3 at 7, 54:15-22. What Officer Nau and Officer Parent believed at the time of Mr. Stoeber's arrest about the law is a factual statement. Thus, the Court deems this fact admitted. Whether the fact is relevant is a different inquiry.

to track the person down; rather, he will call the police and let the police handle the situation. *Id.* at 6, ¶ 20.

The only indicia of alcohol intoxication mentioned by either officer while in contact with Mr. Stoeber before his arrest was Officer's Nau's statement that he smelled alcohol on Mr. Stoeber.[6] Docket No. 59 at 6, ¶ 4. Mr. Stoeber stated that he disagreed with the assertion that he was intoxicated with a firearm. *Id.*, ¶ 7. The training Officer Nau and Officer Parent have received in the Driving Under the Influence ("DUI") context to determine whether an individual is intoxicated is useful in determining whether an individual is intoxicated in other situations. *Id.* at 6-7, ¶ 8. Officer Nau relies on this training to determine whether an individual is intoxicated in both DUI and non-DUI situations. *Id.* at 7, ¶ 9. After telling Mr. Stoeber that he smelled alcohol, Officer Nau made no further inquiry regarding whether Mr. Stoeber had been drinking alcohol, and he did not utilize any of the methods he had been trained in to determine if an individual is potentially under the influence of alcohol. *Id.*, ¶ 10. Mr. Stoeber's father was present

[6] Defendants purport to dispute this fact on three grounds. First, defendants claim that Mr. Stoeber's assertion of fact is unsupported. Docket No. 64 at 3, ¶ 4. But Mr. Stoeber's citation is to a portion of body-worn camera footage of Officer Nau, where Officer Nau is clearly heard stating that he smelled alcohol on Mr. Stoeber. *See* Docket No. 57 at 17:23-17:28. Defendants next argue that Officer Nau indicated that he felt Mr. Stoeber was intoxicated. Docket No. 64 at 3, ¶ 4. However, defendants' citations are to the same portion of the body-camera footage where Officer Nau states he smells alcohol on Mr. Stoeber and to another portion of the body-camera footage where Officer Nau states that Mr. Stoeber is intoxicated (without explaining why he thinks Mr. Stoeber is intoxicated), to which Mr. Stoeber says "I disagree with that" in response. *See* Docket No. 57 at 17:23-17:28; 22:27-22:40. These citations do not establish that either officer mentioned any additional indicia of intoxication prior to Mr. Stoeber's arrest. Finally, defendants assert that Mr. Stoeber "provides no foundation to establish what 'indicia' he is referring to." Docket No. 64 at 3, ¶ 4. But Mr. Stoeber is clear that he is referencing indicia of intoxication. Docket No. 59 at 6, ¶ 4. Thus, the Court deems this fact admitted.

with Mr. Stoeber the entire time after he arrived home from the wedding and did not see Mr. Stoeber drink any alcohol or notice any signs that Mr. Stoeber was intoxicated. *Id.* at 8, ¶ 16. Officer Parent took no steps to investigate whether Mr. Stoeber was under the influence of alcohol. *Id.* at 7, ¶ 13. While Officer Nau was in contact with Mr. Stoeber, Mr. Stoeber was not displaying any balance issues, was not swaying, his movements were not unsteady, his speech was normal, he understood what was going on, and he was able to answer questions. *Id.*, ¶ 12. These are all signs Mr. Nau is trained to look for when determining whether an individual is intoxicated. *Id.*

On July 1, 2024, Mr. Stoeber filed suit against defendants, bringing a claim under 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131 against Officer Nau and Officer Parent for false arrest in violation of his Fourth Amendment rights under the United States Constitution and his rights under Article II, Section 7 of the Colorado Constitution. Docket No. 1 at 10-11, ¶¶ 66-77. Mr. Stoeber also brings a claim against Officer Nau under 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131 for malicious prosecution in violation of his Fourth Amendment rights under the United States Constitution and his rights under Article II, Section 7 of the Colorado Constitution. *Id.* at 11-12, ¶¶ 78-84. On January 9, 2026, defendants filed a motion for summary judgment. Docket No. 56. In the motion for summary judgment, defendants assert that they are entitled to qualified immunity for the claims brought under federal law. *Id.* at 9-10. On January 30, 2026, Mr. Stoeber filed a response, Docket No. 59, and on February 20, 2026, defendants filed a reply. Docket No. 64.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).

"To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

**B. Qualified Immunity**

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "is designed to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Est. of Deweese v. Hancock*, 2026 WL 2416824, at *3 (10th Cir. Aug. 19, 2026) (unpublished) (quoting *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018)). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th

Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

## III. ANALYSIS

### A. False Arrest

The Court will begin its analysis by examining whether defendants are entitled to qualified immunity on plaintiff's false arrest claim under 42 U.S.C. § 1983.[7]

#### *1. Constitutional Violation*

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008); *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) (en banc). "Probable cause exists if 'the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Luethje v. Kyle*, 131 F.4th 1179, 1193 (10th Cir. 2025) (quoting *Adams v. Williams*, 407 U.S. 143, 148 (1972)). "Probable cause requires only a 'fair probability' of illegal conduct, not 'proof that something is more likely true than false.'" *Meadows v. City of Oklahoma City*, 851 F. App'x 127, 129 (10th Cir. 2021) (unpublished) (quoting

---

[7] As the Court will explain below, the analysis for whether defendants violated plaintiff's constitutional rights under 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131 is essentially identical.

*United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)). When determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal quotations and citation omitted). Officers are required "to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Luethje*, 131 F.4th at 1193 (quoting *Cortez*, 478 F.3d at 1117). It is traditionally "a jury question in a civil rights suit whether an officer had probable cause to arrest," *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990); however, "[i]n a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

Officer Nau arrested Mr. Stoeber for an alleged violation of Colo. Rev. Stat. § 18-12-106. Docket No. 56 at 5, ¶ 17. Defendants do not argue that there was probable cause to arrest Mr. Stoeber for any other crime. *See generally id.* "When an officer claims probable cause to arrest under a state law, [courts] look to the text of the state statute—as well as decisions from that state's highest court interpreting the statute, if needed—to determine whether the officer had probable cause to arrest under the specific elements of the state statute." *Luethje*, 131 F.4th at 1193 (citations omitted). Under § 18-12-106(1)(d), it is a class one misdemeanor when a "person has in his or her possession a firearm while the person is under the influence of intoxicating liquor."

Colo. Rev. Stat. § 18-12-106(1)(d). Thus, in order to lawfully arrest Mr. Stoeber for a violation of this statute, defendants needed probable cause that Mr. Stoeber (1) knowingly had a firearm in his possession, and (2) was under the influence of intoxicating liquor. It is undisputed that Mr. Stoeber told Officer Nau he was carrying a gun. Docket No. 56 at 4, ¶ 14. Mr. Stoeber does not argue that defendants lacked probable cause to believe Mr. Stoeber was in possession of a firearm. Accordingly, the relevant inquiry is whether defendants had probable cause to believe Mr. Stoeber was under the influence of intoxicating liquor.

In the context of evaluating a state statute that criminalized driving under the influence, the Colorado Supreme Court found that the term “under the influence of intoxicating liquor” is “substantially synonymous” with “[t]he terms intoxicated” and “drunk.” *People v. Norman*, 572 P.2d 819, 820 (Colo. 1977) (internal quotations omitted). A division of the Colorado Court of Appeals later applied this reasoning to define “under the influence of intoxicating liquor” in the context of interpreting § 18-12-106(1)(d). *People v. Beckett*, 782 P.2d 812, 813 (Colo. App. 1989) (citing *Norman*, 572 P.2d at 820). The Court agrees that it is not enough that defendants had probable cause to believe that Mr. Stoeber had consumed alcohol; rather, defendants needed probable cause to believe that Mr. Stoeber was drunk or intoxicated.

Defendants argue that they had probable cause to believe Mr. Stoeber was intoxicated because he had an “odor of alcohol emanating from [his] breath” and because his decision to obtain his firearm and look for the individuals who menaced

him—as opposed to waiting for the police to arrive—showed a "diminished ability to act with a full mental capacity."[8] Docket No. 56 at 11.

Defendants' claim that Mr. Stoeber had an odor of alcohol emanating from his breath rests on disputed questions of fact.[9] Defendants assert in their statement of facts that Officer Nau "noticed a strong odor of alcohol on Plaintiff's breath." *Id.* at 4, ¶ 13. Mr. Stoeber disputes this assertion, noting that the only evidence in support of this claim is Officer Nau's own statements that he smelled alcohol "on" Mr. Stoeber. Docket No. 59 at 4, ¶ 13. Whether Officer Nau's statements are credible is an issue of fact for the jury. *See Schrecengost v. Powers*, No. 24-cv-00588-PAB-TPO, 2026 WL 863988, at *10 (D. Colo. Mar. 30, 2026) ("The Court agrees that whether Deputy Powers smelled alcohol on plaintiff's breath is a credibility issue that the Court cannot resolve on a summary judgment motion."). But even if it was undisputed that Mr. Stoeber smelled of alcohol, this would still not establish that defendants had probable cause to believe Mr. Stoeber was intoxicated. The Colorado Supreme Court has stated that "there exists 'no case in which an odor of alcoholic beverage, *without more*, has been held to constitute probable cause to believe a person is under the influence of

---

[8] Defendants also argue that "there is no evidence suggesting Plaintiff was arrested based on knowingly false, misleading, or omitted facts." Docket No. 56 at 12. But, as Mr. Stoeber notes, this language tracks the standard for arrests made pursuant to a warrant. Docket No. 59 at 12; *see Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). In their reply, defendants concede that the Court need not consider this argument. Docket No. 64 at 4.

[9] As noted above, "[i]n a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura*, 17 F. Supp. 3d at 1132 (citing *Hunter*, 502 U.S. at 228). Thus, to decide whether defendants are entitled to qualified immunity, the Court will ultimately determine whether probable cause existed as a matter of law. In doing so, however, the Court will also point out factual disputes.

intoxicating liquor.'" *Grassi v. People*, 320 P.3d 332, 339 (Colo. 2014) (quoting *People v. Roybal*, 655 P.2d 410, 413 n.8 (Colo. 1982)). The *Grassi* court made this statement in the context of establishing probable cause that an individual was driving under the influence, but the Court finds no reason why the same analysis should not apply to establishing probable cause for an alleged violation of § 18-12-106(1)(d).

Defendants do not claim that Mr. Stoeber was arrested solely due to an odor of alcohol. Defendants also claim that Officer Nau had probable cause to believe Mr. Stoeber was intoxicated due to his poor decision making. Docket No. 56 at 11-12. Specifically, defendants note that Mr. Stoeber's decision to call the police, obtain his firearm, and look for individuals who just placed him in fear for his life indicated to Officer Nau that Mr. Stoeber was intoxicated. *Id.* at 11. Officer Nau's body-worn camera footage shows that Mr. Stoeber's recounting of what happened before Mr. Stoeber called 911 was rambling and repetitive.[10] Docket No. 57 at 02:00-17:25. Officer Nau listened to Mr. Stoeber's story for over fifteen minutes before arresting Mr. Stoeber. *Id.* Mr. Stoeber stated that he was in fear for his life after confronting the individuals who menaced him. Docket No. 56 at 3, ¶¶ 4, 7. Yet, despite being fearful for his life, Mr. Stoeber obtained a firearm and searched his neighborhood for the individuals. *Id.* at 4, ¶¶ 8, 10. Based on his experience, Officer Nau believed that it was unusual to attempt to track down individuals after calling 911 instead of letting the police handle the situation. *Id.* at 5-6, ¶¶ 19-20.

---

[10] Both parties submitted body-worn camera footage of Mr. Stoeber's interaction with Officer Nau. Docket Nos. 57, 60. No party argues that the Court cannot consider this footage or disputes the accuracy of the footage. Therefore, the Court will consider the body-worn camera footage.

"Probable cause must be judged in light of the 'totality of the circumstances' at the time of arrest." *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990) (*United States v. Watson*, 423 U.S. 411, 428 (1976)). Weighing against defendants' disputed claim that Mr. Stoeber smelled of alcohol and that Mr. Stoeber was exhibiting questionable logic are the undisputed facts that, when in contact with Officer Nau, Mr. Stoeber did not slur his words, he did not exhibit balance issues, even when quickly turning his body to point to something, and he was oriented as to place.[11] The Court finds that a reasonable officer considering the totality of the circumstances would not have probable cause to believe that Mr. Stoeber was intoxicated.[12] This is especially true considering that, under Colorado law, the odor of alcohol, by itself, does not constitute probable cause that an individual is intoxicated. *Grassi*, 320 P.3d at 339. Therefore, the Court finds that the officers violated Mr. Stoeber's constitutional rights by

---

[11] In addressing probable cause for Mr. Stoeber's arrest, defendants argue that Mr. Stoeber "admitted to consuming alcohol earlier in the day." Docket No. 64 at 6-7. But Mr. Stoeber only admitted to consuming "about two-thirds of a flute of champagne or sparkling wine" at around 3:30 p.m., over nine hours prior to his arrest. Docket No. 59 at 2, ¶ 1. Defendants do not explain how this would lead to Mr. Stoeber being intoxicated at the time he was in possession of a firearm or, more relevantly, how this would provide probable cause for Officer Nau—who presumably did not know about the champagne at the time of arrest—to believe that Mr. Stoeber was intoxicated.

[12] Defendants argue that the Colorado Court of Appeals' decision in *People v. Beckett*, 782 P.2d 812, 813 (Colo. App. 1989), supports a finding that there was probable cause to believe Mr. Stoeber was intoxicated. Docket No. 56 at 13-14. Defendants reiterate this argument in their reply. Docket No. 64 at 10. In *Beckett*, 782 P.2d at 813, the court found that a statement by a defendant to an arresting officer that he was "too drunk to drive" established probable cause for the officer to believe the defendant was intoxicated. Defendants argue that this is "a minimal indication of intoxication," yet was sufficient to establish probable cause. Docket No. 56 at 14. Thus, defendants argue that the indicia of intoxication in this case also establish probable cause. *Id.* The Court, however, finds that an individual telling an officer he is "too drunk to drive" is a much stronger indicia of intoxication than the alleged indicia of intoxication here. Moreover, in this case, it is undisputed that Mr. Stoeber explicitly told defendants he disagreed with their assertion that he was intoxicated. Docket No. 59 at 6, ¶ 7.

arresting him without probable cause, satisfying the first prong of the qualified immunity analysis.

For the same reasons listed above in determining that Mr. Stoeber's arrest is a constitutional violation, the Court finds that a reasonable jury could find that there was no probable cause to believe Mr. Stoeber was intoxicated when he was arrested by Officer Nau. Therefore, Officer Nau is not entitled to summary judgment on the § 1983 false arrest claim

Finally, defendants argue that, even if there was no probable cause to arrest Mr. Stoeber, Officer Parent cannot be liable because he did not personally participate in the arrest. Docket No. 56 at 12-13. "A defendant cannot be held liable in a section 1983 action unless he or she caused or personally participated in the alleged constitutional violation." *Pettigrew v. Zavares*, No. 11-cv-00367-WYD-KLM, 2012 WL 1090181, at *4 (D. Colo. Apr. 2, 2012) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)). Defendants assert that, because Officer Parent did not arrest Mr. Stoeber, he did not participate in the alleged constitutional violation. Docket No. 56 at 12-13. It is undisputed that Officer Parent physically assisted with the arrest and placed handcuffs on Mr. Stoeber.[13] *Id.* at 6, ¶ 23. However, there are no facts indicating that Officer Parent assisted in making the probable cause determination that led to Mr. Stoeber's arrest. Thus, the question is whether Officer Parent personally participated in the

[13] Mr. Stoeber also asserts that Officer Parent handled physical evidence, placed Mr. Stoeber in his police car, and transported Mr. Stoeber to jail for booking. Docket No. 59 at 5, ¶ 23. But Mr. Stoeber does not assert these facts in a statement of disputed or undisputed facts, in contravention of the Court's Practice Standards. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.v. Therefore, the Court will not consider these facts.

constitutional violation when he physically assisted in arresting Mr. Stoeber, but did not participate in making the probable cause determination that led to Mr. Stoeber's arrest. The parties cite no caselaw on this issue, nor is the Court aware of any.

"An individual personally participates in the deprivation of a constitutional right if [ ] he participated directly in the constitutional violation." *Humood v. City of Aurora, Colo.*, No. 12-cv-02185-RM-CBS, 2014 WL 4345410, at *9 (D. Colo. Aug. 28, 2014) (citation omitted). "In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kerr v. City of Boulder, Colo.*, No. 19-cv-01724-KLM, 2021 WL 2514567, at *18 (D. Colo. June 18, 2021) (citation omitted). Here, Officer Parent was present throughout Mr. Stoeber's interaction with Officer Nau. Thus, Officer Parent was aware of the same information as Officer Nau—information which the Court found was insufficient to establish probable cause that Mr. Stoeber was intoxicated. Nevertheless, Officer Parent acted in the absence of probable cause by handcuffing Mr. Stoeber. Therefore, the Court finds that Officer Parent's physical assistance in making the arrest constitutes personal participation in the constitutional violation.

***2. Clearly Established***

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120. "As a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by

asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d. 1278, 1285 (10th Cir. 2020) (internal quotation marks, alterations, and citation omitted). "Put another way, a defendant is entitled to qualified immunity if [he] '*could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.* (quoting *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014)). "In determining whether arguable probable cause existed under clearly established law, this Court must look to interpretation of the Colorado criminal statutes under which Plaintiff was arrested." *Tallman v. Wolfe*, No. 22-cv-02129-RMR-STV, 2023 WL 9790016, at *10 (D. Colo. Dec. 22, 2023), *report and recommendation adopted*, 2024 WL 778038 (D. Colo. Feb. 26, 2024) (citing *Kaufman v. Higgs*, 697 F.3d 1297, 1300-01 (10th Cir. 2012)).

Courts cannot "'define the relevant constitutional right at a high level of generality,' and 'the clearly established law must be particularized to the facts of the case.'" *Est. of Deweese*, 2026 WL 2416824, at *3 (quoting *Flores v. Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024)); *see also Zorn v. Linton*, 607 U.S. 568, 930 (2026) ("A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (internal quotations and citation omitted). Specificity is "especially important in the Fourth Amendment context" because "[p]robable cause turns on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules." *Wesby*, 583 U.S. at 64 (internal quotations, alteration, and citations omitted). "It is Plaintiff's burden to show that Defendants are not entitled to qualified immunity—and, more specifically, to identify cases showing that Defendants' actions violated clearly established law." *Dickey v. City*

*of Albuquerque*, 2026 WL 323256, at *11 (D.N.M. Feb. 6, 2026) (citing *Gutierrez v. Cobos*, 841 F.3d 895, 901-03 (10th Cir. 2016)).

When discussing the second prong of qualified immunity, plaintiff does not cite a single case in support of the proposition that arguable probable cause existed to believe that Mr. Stoeber was intoxicated under clearly established law. *See* Docket No. 59 at 18. The Court has also not found a case supporting arguable probable cause under the facts of this case. The closest case on point is *Grassi*, 320 P.3d at 339, where the Colorado Supreme Court stated that, in the context of determining whether a suspect is intoxicated in a DUI investigation, "an unexplained motor vehicle accident coupled with a single indicium of alcohol consumption (e.g., an odor of alcohol or an admission of having consumed alcohol well before the accident), absent additional evidence, does not constitute probable cause that a driver committed an alcohol related offense." (citing *People v. Reynolds*, 895 P.2d 1059, 1062 (Colo. 1995). In *Beckett*, 782 P.2d at 813, a division of the Colorado Court of Appeals defined intoxication under Colo. Rev. Stat. § 18-12-106(1) the same way that the Colorado Supreme Court defined intoxication in the context of a DUI.[14] But even if the Court presumed that establishing probable cause that an individual is intoxicated for a DUI is the same as establishing probable cause that an individual is intoxicated under § 18-12-106(1), the Court would not find that defendants ran afoul of clearly established law. *Grassi* holds that a motor vehicle accident combined with a single indicium of alcohol consumption, such as the odor of alcohol, does not constitute probable cause absent additional evidence. But here, there

[14] *Beckett* was affirmed by the Colorado Supreme Court, but the Colorado Supreme Court opinion did not analyze the definition of intoxication under § 18-12-106(1). *See generally Beckett v. People*, 800 P.2d 74 (Colo. 1990).

was no unexplained motor vehicle accident. Rather, Officer Nau observed and listened to Mr. Stoeber for over fifteen minutes. While not exhibiting balance issues or slurring his words, Mr. Stoeber's statement was blustery, rambling, and repetitive, and, in light of Officer Nau's experience, nonsensical. Combined with the odor of alcohol, Officer Nau determined that there was probable cause to arrest plaintiff for violation of § 18-12-106(1). A reasonable juror could draw a different conclusion regarding whether Mr. Stoeber's behavior was indicative of intoxication; however, viewing the evidence in the light most favorable to Mr. Stoeber, the Court finds that plaintiff fails to show that it was clearly established that Mr. Stoeber's behavior was not indicative of intoxication. Accordingly, the Court finds that defendants are entitled to qualified immunity on the false arrest claim.

**B. <u>Malicious Prosecution</u>**

"To state an arguable constitutional claim for malicious prosecution, a Plaintiff must allege specific facts that demonstrate the following five elements: '(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.'" *McDonald v. Lakewood Police Dep't*, No. 22-cv-02532-LTB-GPG, 2023 WL 11916021, at *3 (D. Colo. Jan. 23, 2023), *report and recommendation adopted*, 2023 WL 11916020 (D. Colo. Feb. 22, 2023) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). Like with the false arrest claim, Officer Nau is entitled to qualified immunity on this claim. As described above, Officer Nau had arguable probable cause for the original arrest of Mr. Stoeber. Therefore,

Officer Nau did not violate clearly established law when arresting Mr. Stoeber and causing his prosecution.

### C. <u>State Law Claims</u>

In *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024), the Colorado Court of Appeals held that, because "the Fourth Amendment of the United States Constitution is 'almost identical' to article II, section 7 of the Colorado Constitution,"[15] and because "[s]ection 13-21-131 is similar to 42 U.S.C. § 1983,"[16] caselaw analyzing Fourth Amendment violations brought under § 1983 provides "persuasive authority" when analyzing article II, section 7 violations brought under § 13-21-131. (citations omitted). However, one notable difference between § 1983 and § 13-21-131 is that "[q]ualified immunity is not a defense to liability pursuant to" § 13-21-131, Colo. Rev. Stat. § 13-21-131(2)(b), whereas qualified immunity provides immunity from suit for claims under § 1983. *Est. of Strong v. Wilson*, No. 17-cv-1276-WJM-SKC, 2019 WL 13258830, at *4 (D. Colo. June 5, 2019). Accordingly, defendants are not entitled to qualified immunity on Mr. Stoeber's state law claims because qualified immunity is not a defense to liability for such claims.

Because the Court will dismiss Mr. Stoeber's § 1983 claims, it must decide whether to exercise supplemental jurisdiction over Mr. Stoeber's state law claims.

---

[15] Article II, section 7 of the Colorado Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Colo. Const. art. II, § 7.

[16] "Section 13-21-131(1) authorizes a private right of action against a peace officer 'who, under color of law, subjects or causes to be subjected . . . any other person to the deprivation of any individual rights . . . secured by the bill of rights, article II of the state constitution.'" *Woodall*, 553 P.3d at 256. Similarly, 42 U.S.C. § 1983 authorizes "a private right of action against a person 'who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Id.*

Whether to exercise supplemental jurisdiction over a state law claim "is in some measure discretionary." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025). Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction in four situations: (1) if the supplemental claim "raises a novel or complex issue of State law"; (2) if the supplemental claim "substantially predominates" over the claims within the court's original jurisdiction; (3) if the district court "has dismissed all claims over which it has original jurisdiction;" and (4) "in exceptional circumstances," when "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "Where federal claims have dropped out of the picture, it is the seminal teaching to dismiss the state law claims without prejudice." *Hallco Env't Inc. v. Comanche Cnty. Bd. of Cnty. Comm'rs*, 149 F.3d 1190, 1998 WL 339460, at *7 (10th Cir. 1998) (internal quotations and citation omitted). Therefore, because the Tenth Circuit has held that it is the "seminal teaching" to dismiss state law claims once all federal claims have been dismissed, *id.*, the Court will dismiss plaintiff's state law claims without prejudice.

Because the Court will dismiss all of Mr. Stoeber's claims, it will deny the pending Rule 702 motion in this case as moot.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants Cody Nau and Jacob Parent's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Request for Qualified Immunity [Docket No. 56] is **GRANTED**. It is further

**ORDERED** that the portions of Mr. Stoeber's first claim for relief based on 42 U.S.C. § 1983 are **DISMISSED with prejudice**. It is further

**ORDERED** that the portions of Mr. Stoeber's first claim for relief based on Colo. Rev. Stat. § 13-21-131 are **DISMISSED without prejudice**. It is further

**ORDERED** that the portions of Mr. Stoeber's second claim for relief based on 42 U.S.C. § 1983 are **DISMISSED with prejudice**. It is further

**ORDERED** that the portions of Mr. Stoeber's second claim for relief based on Colo. Rev. Stat. § 13-21-131 are **DISMISSED without prejudice**. It is further

**ORDERED** that Defendants Cody Nau and Jacob Parent's Motion to Strike the Opinions of Plaintiff's Expert Jason Chilson Pursuant to Fed. R. Evid. 702 [Docket No. 41] is **DENIED as moot**. It is further

**ORDERED** that this case is closed.

DATED September 3, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge